UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                   Case Number 92-81127

v.                                         Honorable David M. Lawson

JOHN GORDON,

        Defendant.
_____/

**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE**

Defendant John Gordon has filed a motion asking the Court to resentence him to time served under the authority of the compassionate release provision of 18 U.S.C. 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239. The government contends that the Court has no jurisdiction to entertain that request at present because Gordon has an appeal pending before the Sixth Circuit on an unrelated issue. It also argues that any sentence reduction should be disfavored after considering the factors in 18 U.S.C. § 3553(a), and denied because Gordon would be a danger to the community if released. The Court has jurisdiction to adjudicate Gordon's motion, but he has not demonstrated that immediate release is appropriate or that he qualifies for release under any other provision of section 3582(c)(1). The motion will be denied.

I.

Gordon currently is serving a life sentence for his role in a violent drug trafficking conspiracy that began on the mid-1980s. The organization, known as "The Best Friends," was responsible for at least eight homicides. Gordon was convicted for two of the murders after a trial that lasted 32 days and involved around 70 witnesses. Gordon (and others) was convicted of conspiracy to distribute cocaine and cocaine base, intentional killing in furtherance of conducting

a continuing criminal enterprise, and using a firearm during and in relation to a drug trafficking crime. The Honorable Avern Cohn imposed a mandatory life sentence. Gordon's convictions and sentence were affirmed. *United States v. Polk*, 182 F.3d 919 (6th Cir. 1999).

Gordon's post-judgment activity has been robust. He filed multiple motions and has gone to the court of appeals six times. More recently, he moved for relief under the First Step Act, arguing that he should be resentenced because his crime involved cocaine base, and the penalties for transacting in certain quantities of that substance were altered by legislation. Judge Cohn denied that motion because Gordon was not eligible for relief, and Gordon filed a notice of appeal. That appeal is being held in abeyance pending a decision by the court of appeals in another, similar case. Pending in this court is a successive motion under 28 U.S.C. § 2255, in which Gordon argues that because some of his participation in Best Friends took place when he was a juvenile, , his life sentence is unconstitutional under *Miller v. Alabama*, 567 U.S. 460 (2012), and *Montgomery v. Louisiana*, --- U.S. ---, 136 S. Ct. 718 (2016).

Gordon presently is confined by the Bureau of Prisons (BOP) at FMC Devens, an administrative security federal medical facility with an adjacent minimum security satellite camp, located in Ayer, Massachusetts. As of August 3, 2020, the BOP's website shows 1 inmate who is positive for COVID-19, 1 staff who is positive, 2 inmate deaths, no staff deaths, 50 inmates recovered, and 6 staff recovered.

Gordon is a 48-year-old African-American male. His medical records confirm that he suffers from chronic kidney disease and self-administers peritoneal dialysis via a catheter in his abdomen. He also has a history of blood clots, high cholesterol, high blood pressure (benign essential), anemia, restless leg syndrome, chronic periodontitis, and antisocial personality disorder. He has been prescribed several medications.

Gordon's prison disciplinary record consists of mostly minor infractions. His most recent infractions were in 2019 for failing to follow safety regulations and being unsanitary. In 2017, he was found guilty of insolence toward staff.

Gordon has completed several educational and vocational courses during his incarceration. In a supplement to his motion, he has attached several certificates of completion. He also attaches letters from his father and his son asking for his release.

If released, Gordon says he will reside with his common law wife in Phoenix, Arizona.

II.

As a general rule, "a federal court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)). "But that rule comes with a few exceptions, one of which permits compassionate release." *Ibid.* "The request may come through a motion in federal court filed by the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). Or it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'" *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has 'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i), (ii)). However, prisoners may not seek judicial relief before they have sought release under this statute from the prison warden. "Even though [the] exhaustion requirement does

not implicate [the Court's] subject-matter jurisdiction, it remains a mandatory condition," and "[i]f the Director of the Bureau of Prisons does not move for compassionate release, a prisoner may take his claim to court only by moving for it on his own behalf.  To do that, he must fully exhaust all administrative rights to appeal with the prison or wait 30 days after his first request to the prison."  *Id.* at 833-34 (quotations omitted).

A.

The government argues that Gordon's pending appeal of the denial of his motion under the First Step Act deprives the Court of jurisdiction to consider the present motion for compassionate release.  As a general matter, filing a notice of appeal transfers adjudicatory authority over a case from the district court to the court of appeals.  *United States v. Carman*, 933 F.3d 614, 617 (6th Cir. 2019).  But a notice of appeal "divests the district court of its control [only] over those aspects of the case involved in the appeal."  *Ibid.* (citing *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (per curiam)); *see also United States v. Holloway*, 740 F.2d 1373, 1382 (6th Cir. 1984).  When the notice of appeal is from a final judgment, "expansion of a district court's judgment [is] not permitted while an appeal is pending."  *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 588 (6th Cir. 1987).  Nonetheless, the district court retains jurisdiction to enforce the judgment, to "proceed with matters that are in aid of the appeal," *Taylor v. KeyCorp*, 680 F.3d 609, 616 n.8 (6th Cir. 2012) (citations omitted), and act on remedial matters unrelated to the merits of the appeal, *Fort Gratiot Sanitary Landfill, Inc. v. Mich. Dep't of Natural Res.*, 71 F.3d 1197, 1203 (6th Cir. 1995).

Gordon's compassionate release motion based on the COVID-19 pandemic in no way relates to any aspect of his First Step Act motion appeal, which is based on a different sentencing issue.  That alone distinguishes the cases that the government relies on.  For instance, in *United*

*States v. Martin*, No. 18-CR-834-7, 2020 WL 1819961, at *1–*2 (S.D.N.Y. Apr. 10, 2020), the defendant appealed the denial of several of this Court's orders, including orders denying various requests to modify the defendant's sentence. In his brief on appeal, the defendant also expressly challenged the Court's order denying the BOP's previous motion for compassionate release. Similarly, in *United States v. Walls*, No. 92-80236, 2020 WL 1934963 (E.D. Mich. Apr. 22, 2020), the district court issued an indicative order denying a compassionate release motion, but the defendant had a pending appeal of the denial of a previous motion for compassionate release based on defendant's serious physical and mental conditions.

Gordon's pending appeal does not address any aspect of his sentence that falls under 18 U.S.C. § 3582(c)(1)(A)(i), which is the statute that governs the present motion. Here, he seeks emergency relief based on his medical condition and the effects of the global pandemic that may jeopardize the health and lives of prison inmates. Although the Court could address the merits of the instant motion by means of an indicative ruling under Federal Rule of Criminal Procedure 37(a), there is no need to proceed that way because this motion does not involve any "aspects of the case involved in the appeal." *Carman*, 933 F.3d at 617.

B.

Under section 3582(c)(1)(A)(i), the Court can order a reduction of a sentence, even to time served, first, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," *second*, if "extraordinary and compelling reasons warrant such a reduction," and *third*, if the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Sentencing Commission's policy statement is found in U.S.S.G. § 1B1.13, which simply recites the statute. The commentary adds gloss, which does not have the force of law. *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.),

*reconsideration denied,* 929 F.3d 317 (6th Cir. 2019) (en banc) (holding that the "commentary has no independent legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it").

The government offers several reasons for denying release. It insists that compliance with the Sentencing Commission's policy statement is mandatory, and points to one line in section 1B1.13 that requires the prisoner to prove lack of dangerousness. But that requirement is a condition of 3582(c)(1)(A)(ii). Gordon has invoked 3582(c)(1)(A)(i), which contains no such requirement.

That is not to say that dangerousness is irrelevant. It is a factor incorporated in section 3551(a), which must be "consider[ed]" before release for extraordinary and compelling reasons may be allowed. *See* 18 U.S.C. § 3553(a)(2)(C) (requiring a sentencing court to consider "the need … to protect the public from further crimes of the defendant"). And any sentence reduction also must account for "the seriousness of the offense," the need "to promote respect for the law," and "afford adequate deterrence to criminal conduct." *Id.* § (2)(A), (C). These factors are to be considered together with the prisoner's circumstances to arrive at a conclusion that they are sufficiently extraordinary and compelling to justify a sentence reduction.

Gordon's crimes were serious — perhaps the most serious known to the law. He was involved in a dangerous, violent drug trafficking organization. He was held responsible for murdering two people. At sentencing, Gordon denied his conduct, but the jury had determined otherwise. Gordon joined the Best Friends gang as a youth, but he remained an active member into his adulthood, committing crimes (including the murders) until he was apprehended and charged in his early twenties. He has served over two decades in prison. He now expresses remorse, takes responsibility, and explains that his violent upbringing and youth resulted in his

crimes. Congress, however, determined that crimes like intentional murder should carry a mandatory life sentence. The Court imposed that sentence, presumably concluding that the sentence was necessary to achieve the goals of sentencing Congress identified in 18 U.S.C. § 3553(a). One of the goals — protection of the public — was paramount in this case. Reducing a life sentence to time served would not promote respect for the law. Although Gordon is less of a danger to the community due to his age and medical condition, this does not take away from the very serious nature of his crimes. Nor does the passage of time diminish the seriousness of the crimes for which he received a life sentence.

Gordon's prison record is unremarkable. He has completed several educational and vocational courses to better himself, including the Thresholds program, which, according to the certificate, is a seven month program consisting of "coursework, journaling, and requirements for the spiritual Re-entry." But as commendable as Gordon's conduct in prison has been, it does not alter the historical fact that the Court undoubtedly imposed a sentence that was not greater than necessary to achieve congressional goals. Eliminating the balance of that sentence would not promote respect for the law or provide a just punishment for Gordon's crimes. Nor would it serve as a significant deterrent to others. Consideration of the factors in 18 U.S.C. § 3553(a) does not favor a sentence reduction, but they are not disqualifying.

To establish extraordinary and compelling reasons for the relief he requests, Gordon points to the conditions of his physical health, arguing that he is vulnerable to complications if he were to contract COVID-19. And he is understandably concerned about being infected with the coronavirus. "The COVID-19 virus is highly infectious and can be transmitted easily from person to person. COVID-19 fatality rates increase with age and underlying health conditions such as cardiovascular disease, respiratory disease, diabetes, and immune compromise. If contracted,

COVID-19 can cause severe complications and death. Because there is no current vaccine, the Centers for Disease Control and Prevention ("CDC") recommends preventative measures to decrease transmission such as physical distancing, mask wearing, and increasing focus on personal hygiene such as additional hand washing." *Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020). "The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation. It presents a clear and present danger to free society for reasons that need no elaboration." *United States of America v. Ortiz*, No. 16-439, 2020 WL 3640582, at *2 (S.D.N.Y. July 6, 2020).

Moreover, "the crowded nature of federal detention centers presents an outsize risk that the COVID-19 contagion, once it gains entry, will spread. And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself. For these reasons, in the past months, numerous [federal] courts . . . have ordered the temporary release of inmates held in pretrial or presentencing custody and, in more limited instances, the compassionate release of high-risk inmates serving federal sentences." *Ortiz*, 2020 WL 3640582, at *2 (collecting cases; footnotes omitted).

Gordon argues that he is at a higher risk for severe illness from COVID-19 because his chronic kidney disease places him at a higher risk of complications. His medical records show that he is in "end stage renal disease" and on "peritoneal dialysis," which he self-administers. However, recent records show he is "doing well," despite occasional noncompliance. His hemoglobin and blood chemistry are monitored regularly. Under the controlled conditions of confinement, Gordon has refused medical treatment. Although the BOP only provided the government with medical records from 2019 and 2020 (which total over 1000 pages), they show that Gordon has at times refused lab tests, been a no-show for scheduled visits, refused the flu shot, refused dental recommendations, and has not consistently taken his blood pressure medication.

He has also at times not administered his dialysis treatments. He has engaged in high impact physical activity against medical advice. He recently refused to go to an emergency room as recommended for treatment of his kidney disease via hemodialysis, explaining that his refusal was due to the fear of catching the virus at an outside facility. And although as recently as May of this year Gordon has begun complained of having violent shaking episodes and headaches, all examinations have reported him to not be in distress. Some medical notes indicate that Gordon may be manufacturing his shaking episodes and suggest he undergo a psychological evaluation due to his behavior.

Gordon's renal disease is a risk factor that supports, but does not establish, that extraordinary and compelling reasons justify a sentence reduction. The common features of the recent cases where inmates have been granted judicial relief on motions for compassionate release due to the pandemic are either (1) properly exhausted claims that unreasonably were refused despite the existence of severe, chronic, or terminal conditions that could warrant release even in the absence of a pandemic, or (2) in cases where the defendants had severe medical conditions that placed them at high risk of coronavirus complications, were housed at a facility with confirmed cases, and had served a large majority of their sentences. *E.g., United States v. Reads*, No. 16-20827, 2020 WL 2572280, at *3 (E.D. Mich. May 21, 2020) (ordering compassionate release of 33-year-old inmate with severe obesity, severe obstructive sleep apnea, hypertension, and "prediabetes"); *United States v. Saad*, No. 16-20197, 2020 WL 2065476 (E.D. Mich. Apr. 29, 2020) (ordering compassionate release of inmate who had served 33 months of a 72-month sentence for a non-violent drug offense, was 71 years old, and suffered from medical conditions including kidney disease, hypertension, pulmonary hypertension, sleep apnea, shingles, diabetes, back problems, a frozen thigh from an overdose of coumadin given by

prison officials, and who also had a history of heart surgery and knee replacement, and a recent diagnosis of kidney cancer); *United States v. Nazzal*, No. 10-20392, 2020 WL 3077948 (E.D. Mich. June 10, 2020) (ordering compassionate release of 65 year old defendant with a history of heart disease, severe asthma, benign prostate cancer, high blood pressure, type 2 diabetes, who served 69% of his sentence for a non-violent fraud offense, had only one minor disciplinary incident, and was housed at a facility with several confirmed COVID-19 cases); *United States of America v. Jajun Omar Gardner*, No. 14-CR-20735-001, 2020 WL 4200979, at *5 (E.D. Mich. July 22, 2020) (ordering compassionate release where defendant reported a number of serious medical issues, many of which the government did not dispute, including a history of hypertension, a heart condition, stage-two kidney disease, hyperlipidemia, lumbar disc disease, lumbar herniation, spinal cord impingement, an artificial knee joint, an artificial shoulder cup, and sickle cell trait). By comparison, Gordon's argument does not measure up to the same level of urgency.

Even if the Court were to conclude that Gordon's health conditions coupled with the conditions of his confinement did meet the extraordinary-and-compelling threshold, consideration of the factors found in section 3553(a) counsel against release.

None of this is to minimize the seriousness of the coronavirus pandemic or the alarming rapidity of its spread within federal prisons. But the pandemic is a global phenomenon and some risk is inherent no matter where Gordon resides, either at home or in prison. He asserts that his risk would be lower at home, but he has not put forth any convincing evidence to demonstrate that he is at an especially elevated risk of harm in the present situation of confinement. And Arizona has a significant number of confirmed COVID-19 cases, having become one the nations leading hotspots of the pandemic.

III.

The Court has jurisdiction to adjudicate the present motion to reduce sentence. Gordon has exhausted his administrative remedies, but he has not demonstrated that compassionate release under 18 U.S.C. 3582(c)(1)(A)(i) is justified.

Accordingly, it is **ORDERED** that the defendant's motion for compassionate release (ECF No. 2396) is **DENIED**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated: August 18, 2020