UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

JOHN GORDON,

Defendant.

_______________________________________/

Case Number 92-81127
Honorable David M. Lawson

**ORDER DENYING MOTION FOR RECONSIDERATION OF ORDER DENYING MOTION FOR COMPASSIONATE RELEASE**

Defendant John Gordon moves for reconsideration of the Court's order denying his motion for compassionate release. The Court denied Gordon's motion because he did not demonstrate an extraordinary and compelling reason for his release and the factors in 18 U.S.C. § 3553(a) counseled against his release. Gordon now argues that the Court erred in five ways, but most of those arguments merely rehash old contentions that the Court addressed already.

Gordon ostensibly brings his "motion for reconsideration" under Federal Rule of Civil Procedure 60(b), which provides an avenue for relief from a final judgment, order, or proceeding. However, Rule 60(b) is a rule of *civil* procedure. A motion for compassionate release is "not a civil post-conviction action, but rather a continuation of a criminal case." *United States v. Brown*, 817 F.3d 486, 488 (6th Cir., 2016) (citations omitted). Because Gordon's motion for compassionate release is a criminal motion, he cannot seek relief under Rule 60(b). *See United States v. Booker*, 352 Fed. App'x. 102, 103 (7th Cir. 2009) ("every circuit court that has addressed § 3582(c)(2) has determined that it is criminal in nature and therefore covered only by rules applying to criminal cases, not civil cases"). He must seek relief under the Local Rule 7.1 instead.

The differences between Rule 60 and Local Rule 7.1 are material in two respects. The scope of relief is much broader under Rule 60(b)(6), which permits Courts to relieve a defendant from a judgment or order for "any other reason that justifies relief." Local Rule 7.1, in contrast, requires the defendant to demonstrate a palpable defect that misled the Court and the parties, and that correcting the defect will result in a different disposition of the case. E.D. Mich. LR 7.1(h)(3). And as relevant here, the deadline by which a party must bring a motion under Rule 60(b)(6) is more flexible; such motions "must be made within a reasonable time." Fed. R. Civ. P. 60(c)(1). A motion for reconsideration under LR 7.1(h) "must be filed within 14 days after entry of the judgment or order." E.D. Mich. LR 7.1(h)(1).

The Court denied the defendant's motion for compassionate release on August 18, 2020, but the defendant did not move for reconsideration until September 15, 2020 — nearly one month after the Court's order and two weeks after the deadline imposed by LR 7.1(h) had passed. Because Local Rule 7.1 uses mandatory language for its deadline, Gordon's motion for reconsideration is untimely and can be denied on that ground alone.

But even if this motion were timely, most of Gordon's arguments simply attempt to relitigate issues previously decided. A motion for reconsideration is not intended as a means to allow a losing party simply to rehash rejected arguments or to introduce new arguments. *See, e.g. Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) ("Thus, parties should not use [motions to reconsider] to raise arguments which could, and should, have been made before judgment issued.").

Old arguments re-presented will not justify reconsideration. *See* E.D. Mich. LR 7.1(h)(3) ("Generally . . . the court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court."). Instead, the moving party must show that the

Court made a mistake — a "palpable error" — based on the record before it and rectifying the mistake would change the outcome. E.D. Mich. LR 7.1(h)(3); *see Mich. Dep't of Treasury v. Michalec*, 181 F. Supp. 2d 731, 734 (E.D. Mich. 2002) (explaining that a "palpable defect" is a defect which is obvious, clear, unmistakable, manifest, or plain) (citations omitted).

The non-repetitive arguments are contradicted by the record. And new arguments "raised for the first time in a motion for reconsideration at the district court generally [are] forfeited." *United States v. Huntington Nat'l Bank*, 574 F.3d 329, 331-32 (6th Cir. 2009).

The defendant argues that the Court erred by concluding that his medical condition, in light of the pandemic, does not amount to an extraordinary and compelling reason for his release. However, aside from generally disagreeing with the Court's decision, he does not point to a specific, palpable error. The parties provided the Court with the defendant's medical records, which the Court reviewed in making its determination. The defendant now points to three declarations from medical experts to support his argument that his medical condition constitutes an extraordinary and compelling reason for release. But those three reports were issued in March and April 2020, and the defendant could have introduced them before the Court issued its ruling. *See Sault Ste. Marie Tribe of Chippewa Indians*, 146 F.3d at 374) ("parties should not use [motions to reconsider] to raise arguments which could, and should, have been made before judgment issued."). Regardless, the introduction of differing medical opinions does not reveal a palpable error with the decision, particularly where the Court acknowledged the defendant's weakened condition. *See* Order denying Mot., ECF No. 2425, PageID.18997-98.

Gordon also disagrees with the Court's conclusion that the section 3553(a) factors counsel against his release. He argues that he poses no danger to the community because he is in frail condition and he would be released in Arizona, far away from his co-defendants. However, the

Court already acknowledged that fact in its decision. The defendant may not simply relitigate this issue.

The defendant also argues that several defendants subject to the same indictment were released from prison, and that keeping Gordon in prison therefore is manifestly unjust. However, these defendants were released years ago, and Gordon does not say why or how that has any bearing on the relief requested here: immediate release due to the coronavirus pandemic. The omission of facts about other defendants that were never raised by the parties does not constitute a palpable error.

The defendant identifies one potential error: that the Court noted incorrectly that Gordon's murder conviction carried a mandatory life sentence. Instead, the statute under which Gordon was convicted imposes a mandatory minimum sentence of 20 years in prison with the possibility of life imprisonment or death. However, any error resulting from that observation was not palpable as the sentencing judge (the Honorable Avern Cohn) found Gordon's conduct severe enough to warrant a life sentence, and the Court considered other factors in finding that 18 U.S.C. § 3553(a) does not favor his release.

Gordon also asserts that the Court erred by finding that he was convicted of conducting a continuing criminal enterprise. But the Court never stated that. Rather, the Court observed that Gordon was convicted of "intentional killing in furtherance of conducting a criminal enterprise" in violation of 21 U.S.C. § 848(e)(1)(A). Order Denying Mot., ECF No. 2425, PageID.18991-92. This was accurate. Judgment, ECF No. 1368; Second Superseding Indictment, ECF No. 882, PaegID.10286 (charging Gordon with intentionally killing Dwight Farrell "while engaged in and working in furtherance of a continuing criminal enterprise and engaging in an offense punishable under section 841(b)(1)(A).").

The defendant also alleges that the Court improperly found that he was held responsible for murdering two people, when no factual findings to that effect were made. However, the Court properly relied on information in the presentence report that described Gordon's role in the offense:

> 27. On September 12, 1993, at 13000 Gratiot, Detroit, MI, at J.R.'s Used Car Lot, Stacey Culbert set up the killing of Dwight Farrell, a rival drug dealer, at the direction of Terrance Brown. John Gordon shot and killed Farrell, and wounded two others in the car lot.
>
> 29. On April 3, 1993, at 14999 Gratiot, Detroit, Michigan, Walter Daniels [] was killed by Edward Dale, John Gordon and Gregory Brown . . . with the assistance of Thomas Carr who drove the getaway car. At least one witness testified that the shooters in this case were Edward Dale and John Gordon, while Gregory Brown was inside a store.

Even if the Court mistakenly found that the defendant was held responsible for the murders of two people instead of one, that does not constitute a palpable error. The Court found the defendant's crime was among "the most serious known to the law." Order Denying Mot., ECF No. 2425, PageID.18996. The Court's observation stands true even if the defendant was responsible for only one murder.

Finally, Gordon argues that the Court relied on faulty or incomplete medical records, which suggested that he suffers from antisocial personality disorder and possibly manufactured his shaking episodes. However, it is not apparent how jettisoning these findings — that Gordon has antisocial personality order and may be feigning the severity of his body shakes — would lead to a different result. Even if Gordon genuinely suffers from body shakes and does not have antisocial personality disorder, those facts do not compel a finding that he demonstrated an extraordinary and compelling reason for his release or that the section 3553(a) factors support his release. Moreover, the evidence he cites for his position is unhelpful and inconclusive.

In its order denying Gordon's motion, the Court stated that "some medical notes indicate that Gordon may be manufacturing his shaking episodes and suggest he undergo a psychological

evaluation due to his behavior." Order Denying Mot., ECF No. 2425, PageID.18999. Gordon now argues that he, "[i]n fact . . . did undergo a psychological evaluation to follow up on this suggestion," and attached the report, which he contends disputes the finding that he feigned his body shakes. Mot. Reconsideration, ECF No. 2426, PageID.19014. The evaluation concluded that no follow up was needed and that Gordon appeared "alert, oriented, and coherent." Psychology Report, ECF No. 2526-9, PaegID.19057. But it did not state that the shakes were real; rather, the report suggests the opposite: "Gordon explained, due to several medical conditions, his body oftentimes shakes. Gordon reportedly told his medical provider his body and head shake 'so hard that his brains are coming out of his ears.' Gordon explained he was exaggerating and is currently 'feeling great.' He stated his medical issues have since been addressed." *Ibid.*

To rebut the Court's conclusion that he has antisocial personality disorder, the defendant refers to a psychology program report from 2012 that indicated he was doing well in the sessions and was dedicated to the program's "pro-social message." 2012 Psychology Report, ECF No. 2426-7. Positive remarks from a 2012 psychology program do little to change the defendant's current diagnosis. Medical Records dated Sept. 18, 2020, ECF No 2435, PageID.19206 (reflecting that the defendant currently suffers from antisocial personality disorder). Nor does the defendant's antisocial personality disorder diagnosis have much to do with the Court's ultimate conclusion.

Gordon has not identified a palpable defect that misled the Court and the parties, or that correcting such a defect would result in a different disposition of the motion for compassionate release.

Accordingly, it is **ORDERED** that the defendant's motion for reconsideration (ECF No. 2426) is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: December 10, 2020