UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

Case Number 92-81127
Honorable David M. Lawson

EDWARD DALE, JOHN GORDON,
GENE POLK, and GREGORY BROWN,

Defendants.
______________________________________/

**OPINION AND ORDER REINSTATING SENTENCES**

The case is before the Court on remand from the court of appeals for a determination of whether the defendants' sentences for multiple crimes committed during a single drug trafficking conspiracy were part of a "sentencing package," and therefore are eligible for an adjustment under the First Step Act, Pub. L. No. 115-391, § 404(b), 132 Stat. 5194, 5222 (2018), where some — but not all — of the counts of conviction are covered by that legislation. The court defined the "operative question" as "whether there is reason to think that, at the time of sentencing, the two sentences were interdependent." *United States v. Dale*, 156 F.4th 757, 769 (6th Cir. 2025) (quoting *United States v. Curtis*, 66 F.4th 690, 694 (7th Cir. 2023)). The undersigned was not the sentencing judge, having inherited the case from the Honorable Avern Cohn. The task, therefore, is to examine the record to see if Judge Cohn imposed a "single, integrated sentence" for each of the four defendants before the Court that "blend[ed] punishment" for the separate counts that were charged under the umbrella of the drug trafficking conspiracy described in the indictment. *Id.* at 771-72 (quoting *Curtis*, 66 F.4th at 694); *see United States v. Russell*, 729 F. Supp. 3d 584, 590 (E.D. Va. 2024) (looking to "several 'hints in the record' that the charges there did 'not represent

freestanding sentences distinct from each other.'" (quoting *United States v. Richardson*, 96 F.4th 659, 669 (4th Cir. 2024)).

I.

The four defendants presently before the Court were charged along with 40 other defendants with a wide-ranging drug distribution conspiracy, which included intentional killings and firearms possession to further the criminal enterprise. The operative pleading at the time of trial was a second superseding supplemental indictment (SSSI). Members of the organization carried out contract murders and drive-by shootings to "maintain control of territories for drug distribution, eliminate competition and provide retribution for non-payment of drug debts." Brown PSR ¶11. Most orders for murders were sent from Terrance Brown, a member of the conspiracy, and the killers received payment for each "hit." *Id.* at ¶23. Defendants Edward Dale, John Gordon, Gene Polk, and Gregory Brown joined the Best Friends drug conspiracy in 1986 as juveniles: Dale was 17 years old, Polk was 16, Gordon was 15, and Brown was 14. However, they were charged as adults with continuing to engage in the conspiracy until 1995, after they reached majority.

In 1995, a jury convicted Dale, Gordon, and Polk of three crimes: (1) conspiracy to distribute cocaine and cocaine base (crack), in violation of 21 U.S.C. §§ 841 and 846; (2) intentional killing in furtherance of conducting a continuing criminal enterprise, in violation of 21 U.S.C. § 848(e)(1)(A); and (3) using a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c). The following year, a jury convicted Brown of the same crimes. All defendants except for Brown shot the victims in the killings for which they were convicted. Each of the defendants' presentence reports describes their involvement in the criminal enterprise.

A.

1. Brown

Brown and codefendant Edward Dale were charged with and convicted of intentionally killing Walter Daniels on or about April 3, 1993, and for carrying a firearm during that killing. Brown PSR ¶¶2-3, 8. On the day of the killing, Brown and Dale entered a store and followed Daniels as he left. *Id.* at ¶28. Once outside, Dale shot Daniels. *Ibid.* "Brown had a weapon but did not shoot Daniels." *Ibid.* It was later determined that the same victim had been shot 16 times with the same weapon. *Ibid.* Codefendant Stacey Culbert reportedly paid the participants with money received from codefendant Terrance Brown. *Ibid.* Neither the presentence report nor the indictment explain why Daniels was selected to be killed, but the jury evidently believed it was in furtherance of a continuing criminal enterprise and during and in relation to a drug trafficking crime when it convicted Brown for the murder under 21 U.S.C. § 848(e)(l)(A) and 18 U.S.C. § 924(c).

The murder was committed while Brown participated in the distribution of cocaine and cocaine base with other members of the Best Friends conspiracy. Conspiracy member Michael Williams testified that he provided Brown with crack cocaine for six or seven months starting in April 1991; Williams provided Brown with increasing amounts of crack cocaine during that time, starting with one ounce per week and rising to four and a half ounces. Brown PSR ¶30. Thomas Carr also testified that Brown sold drugs on behalf of Stacey Culbert. *Id.* at ¶31. Carr witnessed Brown receiving two kilograms of cocaine from Culbert in 1992 and one kilogram from Dale and Gordon in 1994. *Ibid.* Per the PSR, Brown was "held responsible for or had reasonably foreseeable knowledge of the distribution of the three kilograms of cocaine and at least 50 grams but less than 150 grams of crack cocaine." *Id.* at ¶32.

2. Dale

Dale was charged with and convicted of three intentional killings as part of the criminal enterprise. Dale PSR ¶¶1, 3. Dale was the shooter, or one of the shooters, in all three killings. First, as discussed, Dale shot Walter Daniels outside a store on April 3, 1993. *Id.* at ¶22. Second, Dale shot and killed Al Foster in Southfield, Michigan on November 27, 1992. *Id.* at ¶20. Foster was a car dealer who supplied cars to Terrance Brown, and it was believed that Foster was cooperating with federal authorities. *Ibid.* Thomas Carr identified the victim and Dale shot him. *Ibid.* The participants received $20,000 for the killing. *Ibid.* Third, Dale and codefendant Stacey Culbert killed Michael Mitchell, a rival drug dealer, on February 3, 1993, in Detroit, Michigan. *Id.* at ¶21. Dale and Culbert received $30,000 and a kilogram of cocaine as payment. *Ibid.* Dale was charged (and later convicted) under 18 U.S.C. § 924(c) for using or carrying a firearm on February 3, 1993 and April 3, 1993 — both, presumably, in connection with the murders of Mitchell and Daniels on the same dates. *Id.* at ¶¶1, 3.

Dale also distributed cocaine and crack as part of the conspiracy. Dale would receive cocaine from Culbert, who in turn received the cocaine from Terrance Brown (who also ordered most of the murders). *Id.* at ¶¶16, 19. Dale had reasonably foreseeable knowledge of, or was responsible for, the distribution of between 1 and 3 kilograms of cocaine and 1.5 kilograms of crack cocaine. *Id.* at ¶23.

3. Gordon

Gordon was charged with and convicted of killing Dwight Farrell, a rival drug dealer, on September 12, 1992. Gordon PSR ¶¶27, 41. He also was charged with and convicted of using a firearm in connection with a drug crime on the same date, presumably in connection with the same killing. *See* SSSI, ECF No. 882, PageID.10285. Gordon shot and killed Farrell at J.R.'s Used Car lot in Detroit, Michigan. Gordon PSR, ¶27. He also wounded two others in the lot. *Ibid.* The

killing was set up by Stacey Culbert, but Gordon was the shooter. *Ibid.* Furthermore, Gordon participated in shipping money and cocaine between New York, Philadelphia, Miami, Detroit, and Alabama in collaboration with other Best Friends members. *Id.* ¶¶24-25. He was held accountable for at least 50 kilograms of cocaine and at least 500 grams of cocaine base. *Id.* at ¶30.

Gordon's PSR also states that he shot and killed Walter Daniels alongside Dale, *id.* at ¶29, while Brown's PSR states that Gordon was merely a getaway driver, Brown PSR ¶28. In either case, Gordon was not charged with killing Daniels. *See* SSSI, ECF No. 882, PageID.10288-89.

4. Polk

Polk was charged with and convicted of killing William Miles, George Mason, and Sidney Edwards. Polk PSR, ¶¶38, 44, 50. Polk shot the victim in all three killings. Polk and codefendant Michael Williams killed William Miles in front of Miles's home on August 27, 1991. *Id.* at ¶23. Polk reportedly fired first, and "Williams finished off Miles." *Ibid.* Both Polk and Williams escaped an ensuing police shootout. *Ibid.* The PSR does not state why Miles was selected for killing, but the jury evidently believed he was killed in furtherance of a continuing criminal Best Friends drug trafficking enterprise when it convicted Polk for the murder under 21 U.S.C. § 848(e)(l)(A). Polk next killed George Mason, a rival drug dealer, on September 15, 1991, using a 9mm handgun that later was thrown into the river. *Id.* at ¶24. Mason's killing was ordered by Charles Wilkes, another member of the Best Friends conspiracy. *Ibid.* Then, Polk and codefendant Thomas Carr killed Sidney Edwards — the witness to another shooting — on August 17, 1991. *Id.* at ¶25. "Carr's handgun jammed after one shot, so Polk finished the job." *Ibid.* Edwards' killing, along with the earlier shooting he witnessed, were both ordered by Terrance Brown. *Id.* at ¶¶22, 25. Polk was charged with using a firearm during and in relation to a drug trafficking crime on the same date as all three killings. *Id.* at ¶¶ 1, 5.

B.

The defendants each were sentenced under 21 U.S.C. § 841(b)(1)(A), which at the time of their conviction and sentencing was triggered by the distribution of at least 50 grams of crack, and 21 U.S.C. § 848(e)(l)(A), which prescribes a sentence of death or a term of at least 20 years if a person intentionally kills someone while engaging in a violation of section 841(b)(1)(A). Although the drug quantities varied among the defendants, under the Sentencing Guidelines all four defendants' drug conspiracy convictions were cross-referenced to the first-degree murder offense section, resulting in a base offense level of 43 on all drug conspiracy and intentional killing counts. *See* U.S.S.G. §§ 2A1.1, 2D1.1(d)(1) (1995). Only Brown was subject to an enhanced mandatory-minimum penalty on his drug conspiracy conviction alone. Judge Cohn imposed concurrent life sentences on all four defendants, as was mandated by the sentencing regime in effect at the time. Dale received four concurrent life sentences (one for the drug conspiracy conviction; three for intentional killing convictions) and consecutive terms of five and 20 years on two firearm convictions under 18 U.S.C. § 924(c). Polk also received four concurrent life sentences (one for the drug conspiracy conviction; three for intentional killing convictions) and a consecutive 45-year prison term on three section 924(c) convictions. Gordon received two concurrent life sentences (one for the drug conspiracy conviction; one for the intentional killing conviction) as well as a consecutive term of five years on one section 924(c) firearms conviction. Brown received two concurrent life sentences (one for the drug conspiracy conviction; one for the intentional killing conviction) as well as a consecutive term of five years on one section 924(c) firearms conviction.

C.

In 2010, "Congress reformed the sentencing scheme for federal offenses involving crack." *Dale*, 156 F.4th at 762. "Section 2 of the Fair Sentencing Act of 2010 reduced the sentencing disparities between certain crack and powder cocaine offenses." *Ibid.* (citing 21 U.S.C. §§ 841(b)(1)(A)(iii), (B)(iii), 960(b)(1)(C), (2)(C)). Then, in 2018, Congress passed the First Step Act. Section 404 of that law provides that a court may resentence a defendant convicted of certain "covered offenses" — including offenses for which the penalties were modified in Section 2 of the Fair Sentencing Act — "as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." Pub. L. No. 115-391, § 404(a)-(b), 132 Stat. 5194, 5222 (2018).

All four defendants moved for resentencing in 2019, relying on section 404. Judge Cohn initially denied Brown and Gordon's motions, finding that they were not eligible for a sentence reduction because their Sentencing Guideline ranges were calculated under the first-degree murder chapter of the Guideline Manual via the cross-reference mechanism. *See* ECF No. 2372. Gordon appealed, and the Sixth Circuit reversed, concluding that although the conviction of the 21 U.S.C. § 848(e)(1)(A) crime was not a "covered offense" under section 404(b), "[b]ecause the Fair Sentencing Act modified the statutory penalties for Gordon's § 841 drug offense, Gordon was, in fact, eligible for a sentencing reduction under the First Step Act for the sentence that he received on [the controlled substance count]." ECF No. 2457, PageID.19480 (citing *United States v. Snow*, 967 F.3d 563, 564 (6th Cir. 2020); *United States v. Boulding*, 960 F.3d 774, 778-82 (6th Cir. 2020); *United States v. Smith*, 954 F.3d 446, 449 (1st Cir. 2020)). The court remanded the case for consideration of Gordon's motion as to Count One. Following Gordon's appeal and a motion for reconsideration filed by Brown, this Court granted all four defendants' motions for resentencing

in July 2022. Although only the defendants' drug-conspiracy counts were "covered offenses" within the meaning of Section 404, the Court concluded that it "may reduce an entire sentence that includes both covered and non-covered offenses" as a total sentencing package. *United States v. Dale*, 615 F. Supp. 3d 692, 701 (E.D. Mich. 2022), *vacated and remanded*, 156 F.4th 757 (6th Cir. 2025). Prior to the resentencing hearing, the government filed a sentencing memorandum objecting to the Court's planned plenary resentencing.

The Court reduced the sentences for each defendant in December 2022. As to Dale, Gordon, and Polk, the Court reduced the concurrent intentional killing and drug conspiracy sentences (which previously had been life sentences) to terms of years, to be served consecutively with their firearm convictions (which remained unchanged). Dale's new sentence was 45 years, including four concurrent sentences of 20 years, plus 25 years for the firearm charges. Gordon's new sentence was 25 years, consisting of two concurrent 20-year sentences and a five-year sentence under section 924(c). And Polk's new sentence was 70 years, consisting of 20 years for drug conspiracy, 25 years for three murder counts (served concurrently with each other and the drug-conspiracy sentence), and 45 years under several section 924(c) counts. Brown was resentenced to time served. Having served the full length of their sentences, Gordon and Brown were released from custody. The government appealed all four sentences.

The court of appeals vacated the reduced sentences. *Dale*, 156 F.4th at 773. It extended to the First Step Act context the so-called "sentencing package" doctrine, recognizing that "a district court can reduce a sentence for a non-covered offense when it was 'packaged' with a covered offense for sentencing purposes." *Id.* at 769. However, it determined that this Court must further "explain how each Defendant's sentences fell within that doctrine," which had been limited "partially due to the government's failure to timely address the sentencing-package issue." *Id.* at

773. It remanded the case for an explanation of "how each Defendant's sentence fell within that doctrine." *Ibid.*

II.

If the defendant was convicted of a "covered offense," the First Step Act permits the Court to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed." Pub. L. No. 115-391, § 404(b), 132 Stat. 5194, 5222. It is undisputed that the defendants' drug conspiracy convictions qualify as covered offenses. The Sixth Circuit directed this Court on remand to determine whether the defendants' sentences for the non-covered homicide convictions were components of a "sentencing package" with the covered offenses. *Dale*, 156 F.4th at 773. If so, the defendants' non-covered offenses are eligible for resentencing. *Ibid.*

The Sixth Circuit has long recognized that "where a defendant is sentenced on multiple counts under the sentencing guidelines, there is often a 'sentencing package' where sentences imposed on the multiple counts are interdependent." *Pasquarille v. United States*, 130 F.3d 1220, 1222 (6th Cir. 1997) (citation omitted). In *Dale*, the Sixth Circuit extended the sentencing package doctrine to resentencing under the First Step Act, holding that "a district court can reduce a sentence for a non-covered offense when it was 'packaged' with a covered offense for sentencing purposes." 156 F.4th at 769. "[I]f the district court has imposed a single, integrated sentence that blends punishment for a covered offense with punishment for a non-covered offense, . . . the court has the discretion to consider resentencing for an offense that is not covered by the First Step Act." *Id.* at 771-72 (quoting *Curtis*, 66 F.4th at 694).

A sentence for two counts is part of the same package if "there is reason to think that, at the time of sentencing, the two sentences were interdependent." *Id.* at 769 (quoting *Curtis*, 66

F.4th at 694). The *Dale* majority did not provide an exhaustive or comprehensive definition of what interdependence means. But, in illustrating the concept, the court suggested that two sentences might be part of a package where the sentencing court considers the length of a mandatory consecutive sentence in setting the duration of the sentence for another count, *ibid.* (citing *Dean v. United States*, 581 U.S. 62, 67 (2017)), or when two offenses are grouped together for sentencing, *id.* at 769-70. A third example suggests that two concurrent sentences — one for drug conspiracy, and one for another crime — could be part of a package for purposes of this analysis. *Id.* at 770. These illustrations were not exhaustive examples of circumstances in which the sentencing package doctrine could apply.

The *Dale* court also cited with approval the Seventh Circuit's statement that there may be "other indicia in the record" suggesting that "the court intended to issue one global sentence of an appropriate length." *Id.* at 769 (quoting *Curtis*, 66 F.4th at 694). In assessing interdependence in other sentencing package cases, the Sixth Circuit has considered evidence in the record such as "the district court's consideration of [the defendant's] course of conduct, history, and personal characteristics; the sentencing factors; and whether the offenses at issue were discussed individually or as aggregated conduct or sentences." *United States v. Bartoli*, No. 21-4045, 2023 WL 5206446, at *7 (6th Cir. Aug. 14, 2023) (collecting cases).

Judge Cohn had little discretion at sentencing. Since the Sentencing Guidelines were mandatory at the time, he was required to sentence all four defendants to Guidelines-mandated life imprisonment on the drug conspiracy and intentional killing convictions. However, he could have ordered that those sentences be served consecutively or concurrently. The firearm convictions carried mandatory minimum, non-concurrent sentences. Judge Cohn imposed concurrent life

sentences on all four defendants for the intentional killing and drug conspiracy charges, plus consecutive sentences for the gun charges.

Several factors that apply to each of the defendants, with a couple exceptions, point to the conclusion that Judge Cohn's impositions of concurrent life sentences for both covered and non-covered offenses were interdependent.

A. Grouping

"One way — perhaps the most common way — to show interdependence would be to see if the counts were grouped for sentencing." *Curtis*, 66 F.4th at 694. "Where one part of the group is subject to resentencing, it makes little sense not to also resentence the defendant on the remainder of the grouped offenses, the original sentences for which were dependent on the counts now eligible for resentencing." *Dale*, 156 F.4th at 769-70 (citing *ibid.*).

The offenses for which Dale, Gordon, and Polk were convicted were not grouped by the Probation Department at the time of sentencing. Instead, the probation officer used the homicide chapter to establish the offense level under the cross-reference provision of the drug chapter. *See* U.S.S.G. § 2A1.1(a) (1995). Grouping is not a direct factor relevant to these defendants.

The grouping issue is more complicated with respect to Brown. Brown's offenses were grouped at the time of sentencing without objection from the government. Brown PSR ¶37. Per the presentence report, the homicide and drug-conspiracy offenses were grouped under U.S.S.G. § 3D1.2(b) because they were "closely related" and "refer[red] to the same victim." *Ibid.*

The government now argues that this grouping was erroneous. The advisory comments in the version of the guidelines in effect at the time explain that homicides and drug offenses have different victims: "Generally, there will be one person who is directly and most seriously affected by the offense and is therefore identifiable as the victim," but "[f]or offenses in which there are no identifiable victims (*e.g.*, drug or immigration offenses, where society at large is the victim), the

'victim' for purposes of subsections (a) and (b) is the societal interest that is harmed." U.S.S.G. § 3D1.2 cmt. 2 (1995). The victim of Brown's homicide was a discrete person, while the victim of his participation in a drug-distribution conspiracy was society at large. Therefore, the offenses did not "refer to the same victim," Brown PSR ¶37, and the offenses should not have been grouped.

The question whether the offenses were grouped properly in 1997, however, is somewhat beside the point. Instead, the Court must consider if the grouping determination sheds some light on Judge Cohn's intent in imposing a sentence. Grouping is a useful proxy for interdependence because it demonstrates that the offenses were closely related and considered together for the purposes of calculating a sentence. *Dale*, 156 F.4th at 769-70. If Judge Cohn understood the offenses to be grouped, it is more likely that he would have understood himself to be issuing a sentence that aggregated punishment for multiple related crimes. The grouping, erroneous as it might have been, still puts a thumb on the scale in favor of construing Brown's sentence as a single package.

B. Other Evidence

The absence of grouping for Dale, Gordon, and Polk is not dispositive. "Whether counts are interrelated as a package is not confined to situations where the Guidelines group them together." *Richardson*, 96 F.4th at 669 n.12. There may be "other indicia in the record, such as statements made at the time of sentencing or evidence that the court intended to issue one global sentence of an appropriate length." *Curtis*, 66 F.4th at 694.

1. The Sentencing Record

First consider the court record at sentencing: "the district court's consideration of [the defendant's] course of conduct, history, and personal characteristics; the sentencing factors; and whether the offenses at issue were discussed individually or as aggregated conduct or sentences." *Bartoli*, 2023 WL 5206446, at *7 (collecting cases). Judge Cohn did not discuss the history and

characteristics of the defendants, the nature of the crimes, or any of the other factors relevant to sentencing during the hearings — presumably because he understood those factors to be immaterial. As he observed, the then-mandatory sentencing guidelines left him "no discretion" to craft individualized sentences. Brown Sentencing Tr., ECF No. 1680, PageID.11761; Polk Sentencing Tr., ECF No. 1581, PageID.6894.

It is difficult to assign much significance to Judge Cohn's discussion of the sentences as "individual[]" or "aggregated," *see Bartoli*, 2023 WL 5206446, at *7, since he intermittently discussed some sentences as individual and some as aggregated. Judge Cohn sentenced Brown "on Count 1 *and* 15 for your life," which suggests that he understood that he was imposing a single, integrated sentence for both offenses. ECF No. 1680, PageID.11762 (emphasis added). His description of Polk's murder and drug offense sentences was similarly aggregated. Polk Sentencing Tr., ECF No. 1581, PageID.6896 ("It is the sentence of the Court that you be committed to the custody of the Bureau of Prisons on Counts One, Four, Six, and Eight for a concurrent term of life. On Count Five, five years consecutive."). Meanwhile, Judge Cohn pronounced the sentences for each count separately for Gordon. Gordon Sentencing Tr., ECF No. 1610, PageID.6904 ("The sentence on Count One is life. The sentence on Count Eight is life."). And for Dale, the transcript could be read to support either a separated or aggregated interpretation of the sentence. *Compare* Dale Sentencing Tr., ECF No. 1569, PageID.6915 ("It's the sentence of the court that you be committed to the custody of the Bureau of Prisons on Count 1 for a term of life. Count 13 for a term of life. Count 15 for a term of life."); *with id.* at PageID.6913 ("So, the Court is obligated, under law, to impose *a* sentence of life plus 25 years.") (emphasis added).

A hyper-literal reading of Judge Cohn's statements at the time of sentencing could suggest that he intended to impose aggregate sentences on some defendants (*e.g.*, Polk) and separate and

distinct sentences for others (*e.g.*, Gordon). But it is highly unlikely that this was Judge Cohn's understanding. It is difficult to think of a reason why Judge Cohn would consider the sentences to be part of a single aggregate sentence in some instances but separate in others when the underlying crimes were similar. Rather, it is more likely that these were off-the-cuff statements made in short sentencing proceedings that say little about Judge Cohn's intention, when he was tasked with imposing mandatory, integrated sentences for the several crimes committed during a wide-ranging drug trafficking conspiracy.

2. Concurrent Sentences

A common theme in all the sentences, however, is that the terms for the murder and controlled substance offenses ran concurrently. That factor weighs in favor of applying the sentencing package doctrine in similar cases. *See United States v. Russell*, 729 F. Supp. 3d 584, 591 (E.D. Va. 2024). In *Russell*, the defendant was sentenced to concurrent life sentences for drug conspiracy and two non-covered offenses (murder in furtherance of a drug trafficking offense and interstate transportation in aid of racketeering). *Id.* at 586. The court in *Russell* had received the case on re-assignment and was required to evaluate the record to determine the original sentencing judge's intent. *Id.* at 590. Because the sentencing judge's hands were tied by the then-binding sentencing guidelines, he "said very little at the defendant's sentencing hearing about the reasons for his sentence." *Ibid*. Nonetheless, the sentencing judge's decision to impose multiple life sentences concurrently was one of several "hints in the record" that they functioned as a single package. *Ibid.* (quoting *Richardson*, 96 F.4th at 669). As the Court explained:

> Judge Morgan's choice to impose concurrent sentences weighs in favor of the conclusion that he meant for the defendant's total sentence to function as a package. Because he was required to sentence the defendant to life on all three counts, the only discretion Judge Morgan had was to run the sentences concurrently or consecutively. . . . If Judge Morgan had wanted to capture the sense that the defendant's crack distribution was distinct from his role in the murder, he could have issued consecutive sentences; but he did not. The sentencing court's choice to

> impose concurrent sentences in this case suggests, however subtly, that the judge intended to sentence the defendant as a whole person, rather than doling out punishment for each crime piecemeal.

*Id.* at 591 (internal citations and quotation marks omitted).

*Russell*'s reasoning is persuasive. Here, as in *Russell*, Judge Cohn's discretion was limited in the case of each of the four defendants, so "the only discretion [he] had was to run the sentences concurrently or consecutively." *Ibid.* Judge Cohn could have imposed consecutive sentences, *see* 18 U.S.C. § 3584(a), especially if he believed that the offenses should have been punished discretely rather than as an integrated punishment. But in exercising the only discretion he had in the sentencing proceedings, Judge Cohn chose concurrent sentences. This choice is significant evidence that Cohn did not view the conspiracy and murder charges as offenses deserving separate and distinct punishments.

The government argues that concurrent sentences are not evidence of interdependence because multiple sentences run concurrently by default. *See ibid.* ("Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively."). This default rule, however, does not change the fact that Judge Cohn could have made a different choice and could have run the sentences consecutively. The fact that he did not weighs against interpreting the concurrent sentences as separate punishments.

The government also relies on some out-of-circuit caselaw for the proposition that "concurrent sentences, by definition, do not indicate interdependence." ECF No. 2645, PageID.21688 (citing *United States v. Junius*, 86 F.4th 1027, 1028 n.1 (3d Cir. 2023)). True, the Third Circuit (and some other courts) adopted the overarching view that "the sentencing package doctrine does not usually apply to . . . concurrent sentences." *Junius*, 86 F.4th at 1028 n.1. The Sixth Circuit, however, has acknowledged that concurrent sentencing is a tool that sentencing

courts might use to construct a sentencing package. *United States v. Faulkenberry*, 614 F.3d 573, 591 (6th Cir. 2010) ("Having reviewed the sentencing transcript, we are convinced that the district court imposed interdependent sentences here. Had the district court known that the money-laundering convictions were invalid, it might have chosen to make some of the other sentences consecutive rather than concurrent."). The *Dale* court itself includes language contemplating that two concurrent sentences could be part of a package:

> It is no leap to consider the situation of a defendant convicted of a drug-conspiracy offense for which the Guidelines recommend a life sentence who is then sentenced to a concurrent term of life on a second offense because the drug-conspiracy sentence already provides for a life sentence. If faced with a motion under the First Step Act, the sentencing court might conclude that, notwithstanding the defendant's eligibility for relief, a life sentence continues to be appropriate, especially considering the second offense, which was also punishable by life, or it might conclude that it contemplated a single global sentence that would have been different had the Fair Sentencing Act been in effect.

156 F.4th at 770.

3. Substantive Relatedness

Courts also have treated the substantive relationship between the crimes — factually and how the charges mesh with each other legally — as relevant to the sentencing package doctrine. In *Richardson*, for instance, the Fourth Circuit pointed to the indictment as relevant evidence that two offenses were part of a sentencing package, observing that a sentence for a continuing criminal enterprise that included crack distribution (a non-covered offense) was likely to be related to a sentence imposed on a separate crack-distribution count (a covered offense) because the conduct charged in the covered offense was also the basis of the non-covered offense. 96 F.4th at 669. The district court in *Russell* made the same inference where "the . . . non-covered charge — aiding and abetting murder in furtherance of a drug trafficking offense — would likely not even exist as indicted without the allegations in the covered offense." 729 F. Supp. 3d at 590. As the defendants point out, the same is true here. The defendants' non-covered counts for intentional killing while

engaged in a drug distribution conspiracy could not have existed as charged without the conduct alleged in the covered counts: conspiring to distribute drugs.

The government disagrees on this point as well. Factual interrelatedness is irrelevant, the government argues, because the sentencing package doctrine "focuses on the interdependence of the *sentences*, not of the offenses." ECF No. 2642, PageID.21627. It is true that the core inquiry underlying the sentencing package doctrine is "the connection between the offenses for purposes of sentencing" rather than the "connection between the counts for the purposes of conviction." *Curtis*, 66 F.4th at 694. But that does not mean that the relationship between the charges has no role to play. One rationale of the sentencing package doctrine is that "when a defendant is found guilty on a multicount indictment, there is a strong likelihood that . . . the sentences on the various counts form part of an overall plan [of punishment]. . . ." *Bartoli*, 2023 WL 5206446, at *6 (quoting *United States v. Townsend*, 178 F.3d 558, 567 (D.C. Cir. 1999)). If the underlying charges are related factually or legally, it stands to reason that the sentencing judge considered the relevant conduct together when crafting a sentence. Consistent with this view, the Sixth Circuit has treated factual relatedness as evidence that two sentences formed a package. *Id.* at *7 (applying the sentencing package doctrine where the underlying counts were "substantively interrelated" and the sentencing court "not only . . . treat[ed] the offenses as interrelated while sentencing Bartoli, but the offenses capture the various aspects of conduct that make up the same schemes"); *see also United States v. Faulkenberry*, 461 F. App'x 496, 502 (6th Cir. 2012) (observing that sentences ordinarily are part of a package "[w]hen a defendant is convicted of and sentenced for multiple offenses stemming from the same course of conduct").

Here as well, it is reasonable to infer that Judge Cohn would have thought two punishments were related when the conduct giving rise to the punishments also was related. Such an inference

is particularly warranted in this case, where the non-covered offenses could not even have been charged without the crack-distribution scheme alleged in Count One. Combined with Judge Cohn's decision not to run the sentences consecutively, the close legal and factual connection between the offenses tends to weigh against interpreting the sentences as separate and discrete punishments as to each of the four defendants.

4. Lack of Discretion

As discussed throughout, the then-mandatory sentencing guidelines required Judge Cohn to sentence all four defendants to life imprisonment for both the intentional killing and drug conspiracy counts. Because of this lack of discretion, the government argues, the sentences could not have been interdependent because the length of the sentences for each count had to be life, regardless of the length of any of the other sentences.

To adopt this argument, the Court would need to agree with the government's premise that the sentencing package doctrine *only* applies when the length of the sentence on one count affects the length of a sentence on another count. However, the *Dale* majority did not describe such a limitation on the doctrine. Only the dissent suggested that view, *Dale*, 156 F.4th at 780 (Murphy, J., dissenting) (arguing that sentences are only "interdependent" if "the term of years that the court picked for the covered offenses . . . affected the term of years that it picked for the noncovered one"), which does not control here, *see Trump v. Barbara*, 146 S. Ct. 2438, 2458 (2026). And, if the *Dale* majority agreed that two non-discretionary sentences can never be interdependent for the purposes of the sentencing package doctrine, there would have been no need to remand the case because the defendants would categorically be ineligible for resentencing.

* * *

The evidence is not conclusive that Judge Cohn intended to punish the covered and non-covered offenses collectively. However, his contemporaneous understanding that Brown's

offenses were grouped, his decision to impose concurrent sentences on all defendants, and the substantive interrelatedness of the crimes as charged all point to the conclusion that Judge Cohn imposed "a single, integrated sentence that blends punishment for a covered offense with punishment for a non-covered offense" for each of the four defendants. *Dale*, 156 F.4th at 771-72 (quoting *Curtis*, 66 F.4th at 694). The sentencing package doctrine permits the defendants to be resentenced on their covered and non-covered offenses.

C.

The government also points out — correctly — that establishing eligibility under section 404(c) of the First Step Act does not *entitle* a defendant to resentencing. Following that observation, the government asks the Court to weigh the factors in 18 U.S.C. § 3553(a) and refuse to reduce the sentences of any defendant. However, the Court engaged in that task at the resentencing hearings in 2022, and the Sixth Circuit left that determination undisturbed. Because the remand order directed the Court only to address the application of the sentencing package doctrine, *Dale*, 156 F.4th at 773, the Court finds no basis to revisit the discretionary question. And the government has not identified any evidence that would alter the Court's previous determination.

III.

For the reasons discussed, the sentencing package doctrine applies to the sentences imposed by Judge Cohn in 1996 and 1997 for the crimes committed by defendants Edward Dale, John Gordon, Gene Polk, and Gregory Brown because there is reason to believe that, at the time of sentencing, the sentences for the drug trafficking conspiracy convictions and the sentences for the murders committed during the course of the drug trafficking conspiracy were interdependent. The Court, therefore, concludes that the defendants are entitled to relief on their motions under the

First Step Act, Pub. L. No. 115-391, § 404(b), 132 Stat. 5194, 5222 (2018), for the covered and non-covered offenses.

Accordingly, it is **ORDERED** that the amended judgment and commitment orders for defendants Edward Dale (ECF No. 2579), John Gordon (ECF No. 2584), Gene Polk (ECF No. 2585), and Gregory Brown (ECF No. 2582) are **REINSTATED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: November 17, 2026